IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2011-NMSC-030

Filing Date: June 27, 2011

Docket No. 32,447

GINA MENDOZA as personal representative
under the Wrongful Death Act of Michael
Mendoza, deceased, and F. MICHAEL HART,
as personal representative under the Wrongful
Death Act of Desiree Mendoza, deceased,

      Plaintiffs-Respondents,

v.

TAMAYA ENTERPRISES, INC., a federally chartered
corporation, d/b/a SANTA ANA STAR CASINO,

      Defendant-Petitioner.

ORIGINAL PROCEEDING ON CERTIORARI
Nan G. Nash, District Judge

Rothstein, Donatelli, Hughes, Dahlstrom, Schoenburg & Bienvenu, L.L.P.
Richard W. Hughes
Donna M. Connolly
Santa Fe, NM

for Petitioner

Plotsky & Dougherty, P.C.
David L. Plotsky
Albuquerque, NM

Toulouse & Associates, P.A.
Charlotte Mary Toulouse
Albuquerque, NM

for Respondents

OPINION

**MAES, Justice.**

**{1}**    In this appeal we first address the question of state court jurisdiction in a dram shop action brought under the Tribal-State Class III Gaming Compact (the Compact), negotiated between the State of New Mexico and the Pueblo of Santa Ana pursuant to the Indian Gaming Regulatory Act of 1988, 25 U.S.C. §§ 2701-2721 (2006).  There is an apparent conflict between Section 8 of the Compact,[1] which provides for state court jurisdiction where a casino visitor has been injured by the conduct of a casino, and Section 191 of the Pueblo of Santa Ana Liquor Ordinance, which reserves exclusive jurisdiction to tribal courts.  *See* Pueblo of Santa Ana Liquor Ordinance, 71 Fed. Reg. 17,903, 17,910 (Apr. 7, 2006) (Pueblo Liquor Ordinance).

**{2}**    Siblings Michael and Desiree Mendoza attended a wedding reception at the Santa Ana Star Casino operated by Petitioner, Tamaya Enterprises, Inc. (the Casino), where they were served alcoholic beverages and became intoxicated.  Casino employees continued to serve Michael and Desiree alcohol despite their apparent intoxication.  Michael and Desiree left the Casino and were killed when their vehicle left the roadway and rolled over.  Suit was filed in state court against the Casino claiming that the Casino's delivery of alcohol to Michael and Desiree while they were obviously intoxicated was in violation of Section 184 of the Pueblo Liquor Ordinance and proximately caused their deaths.  *See* 71 Fed. Reg. at 17,909 ("No person shall sell any alcoholic beverage to a person who the seller has reason to believe is intoxicated or who the seller has reason to believe intends to provide such alcoholic beverage to an intoxicated person.").  The Casino sought to dismiss the suit, claiming the state court lacked jurisdiction over a dram shop action where the tavernkeeper's duty not to serve alcohol to an intoxicated person is imposed by tribal law, not state law, and where the tribal law contains a provision reserving exclusive jurisdiction to the tribal courts.

**{3}**    Pursuant to the Compact, our state courts properly exercise jurisdiction over casino visitors' personal injury claims.  The language of Section 8 reflects the parties' agreement on this matter and is not susceptible to differing interpretations—the Pueblo of Santa Ana (the Pueblo) consented to suit in state court for personal injury claims proximately caused by the conduct of the Casino.  Thus, the exclusive tribal jurisdiction provision cannot change the agreement of the parties expressed in the clear language of Section 8.  Moreover, the fact that a previous version of the Pueblo Liquor Ordinance, which included an exclusive tribal jurisdiction provision, was in effect at the time the Pueblo entered into the Compact with the State suggests that the Pueblo knowingly relinquished jurisdiction.  *See generally Doe v. Santa Clara Pueblo*, 2007-NMSC-008, ¶ 18, 141 N.M. 269, 154 P.3d 644; *Gallegos v. Pueblo of Tesuque*, 2002-NMSC-012, ¶ 7, 132 N.M. 207, 46 P.3d 668.  Accordingly, by virtue of Section 8 of the Compact, the Pueblo unambiguously agreed to proceed in state

---

[1]For reference, the text of the Compact can be found at www.nmgcb.org/tribal/2001compact.pdf

court for claims involving injuries proximately caused by the conduct of the Casino. Therefore, we hold that our state courts may exercise jurisdiction over this case.

{4} The second issue concerns the two types of common law dram shop claims: claims brought by third parties injured by the conduct of the intoxicated patron against a tavernkeeper (third-party claims) and claims brought by the intoxicated patron against the tavernkeeper to recover for his own injuries (patron claims). We consider the status of such common law claims following the codification of dram shop liability in the Liquor Control Act. *See* NMSA 1978, §§ 60-3A-1 to -12 (1981, as amended through 2009); NMSA 1978, § 41-11-1 (1986). Due to the explicit language of Section 41-11-1, limiting its application to taverns licensed under New Mexico law, we hold that Section 41-11-1 was not intended to preempt all common law claims. Accordingly, because Section 41-11-1 does not preempt all common law claims, we hold that the common law recognizes an action by a third party against a tavernkeeper for over service of alcohol. Additionally, given the Legislature's adoption of patron claims subject to proof of gross negligence on the part of the liquor licensee, *see* § 41-11-1(B), we hold that modern public policy supports an analogous common law patron claim. Therefore, we affirm the result reached by the Court of Appeals.

## I.    BACKGROUND

{5} Because our review is of the Casino's motion to dismiss pursuant to Rule 1-012(B)(6) NMRA, we accept as true all facts pleaded in the complaint in order to determine whether the plaintiffs "may prevail under any state of the facts alleged." *Callahan v. N.M. Fed'n of Teachers-TVI*, 2006-NMSC-010, ¶ 4, 139 N.M. 201, 131 P.3d 51. The following facts were pleaded by the personal representatives (Respondents) of Michael and Desiree Mendoza in their second amended complaint.

{6} On July 9, 2006, Michael and Desiree attended a wedding reception at the Casino. Casino employees served alcoholic beverages to Michael and Desiree at the reception; as a result, Michael and Desiree became intoxicated. Casino employees continued to serve Michael and Desiree alcohol despite their apparent intoxication. Following the reception, Michael and Desiree left the Casino and traveled south on I-25. North of the Tramway exit, their vehicle left the roadway and rolled over, causing their deaths. No other vehicles were involved in the fatal crash. Respondents also allege that the Casino is licensed by the Pueblo to sell and serve alcoholic beverages. Respondents do not allege which of the siblings was driving the vehicle at the time of the crash.

{7} Respondents filed a suit for wrongful death against the Casino, seeking to impose liability on the Casino for selling or serving alcoholic beverages to intoxicated persons. They claim that the Casino's delivery of alcohol to Michael and Desiree while they were obviously intoxicated was in violation of Section 184 of the Pueblo Liquor Ordinance and proximately caused their deaths. *See* 71 Fed. Reg. at 17,909 ("No person shall sell any alcoholic beverage to a person who the seller has reason to believe is intoxicated or who the

seller has reason to believe intends to provide such alcoholic beverage to an intoxicated person.").

**{8}** Before the district court, the Casino moved to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 1-012(B)(6). *See Mendoza v. Tamaya Enters.*, 2010-NMCA-074, ¶ 1, 148 N.M. 534, 238 P.3d 903. The district court granted the Casino's motion to dismiss and subsequently denied Respondents' motion for reconsideration. *Id.* ¶ 3.

**{9}** Respondents appealed, and the Court of Appeals issued an opinion reversing the district court's dismissal of the complaint and remanding for further proceedings. *See id.* The Court of Appeals held that claims by casino visitors for "bodily injury or property damage" were within the Compact's grant of state court jurisdiction and therefore concluded that the district court could properly exercise jurisdiction over the matter. *Id.* ¶ 24. The Court also held that "there is a recognized common law cause of action for an injured, third-party passenger," *id.* ¶ 19, as well as a common law cause of action for patrons, based on the duty not to serve alcohol to intoxicated individuals provided by the Pueblo Liquor Ordinance, *Mendoza*, 2010-NMCA-074, ¶ 22. Subsequently, the Casino filed a petition for certiorari pursuant to NMSA 1978, Section 34-5-14(B) (1972) and Rule 12-502 NMRA. *Mendoza v. Tamaya Enters.*, 2010-NMCERT-008, 148 N.M. 943, 242 P.3d 1289. We granted the Casino's petition to consider three issues: (1) whether our state courts may exercise jurisdiction over a dram shop action where the tavernkeeper's duty not to serve alcohol to an intoxicated person is imposed by tribal law, not state law, and where the tribal law contains a provision reserving exclusive jurisdiction to the tribal courts; (2) whether the common law recognizes a third-party claim against a tavernkeeper for over service of alcohol following the enactment of Section 41-11-1; and (3) whether the common law recognizes a patron claim against a tavernkeeper for over service of alcohol following the enactment of Section 41-11-1.

## II.    STANDARD OF REVIEW

**{10}** The issue of whether the district court has jurisdiction to hear Respondents' complaint or whether the matter must be heard by a tribal court is a question of subject matter jurisdiction which we review de novo. *Gallegos*, 2002-NMSC-012, ¶ 6.

**{11}** Our review of the motion to dismiss for failure to state a claim requires that we assume the factual allegations made in the complaint are true, and, thus, our review is confined to the "legal sufficiency of the complaint." *Herrera v. Quality Pontiac,* 2003-NMSC-018, ¶ 2, 134 N.M. 43, 73 P.3d 181. Accordingly, we must determine as a legal matter if Respondents "may prevail under any state of the facts alleged." *Callahan*, 2006-NMSC-010, ¶ 4. Our determination of whether Respondents may prevail depends upon the construction of Section 41-11-1. In construing a statute, "[w]e look first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended." *Oldham v. Oldham*, 2011-NMSC-007, ¶ 10, 149

N.M. 215, 247 P.3d 736 (alteration in original) (internal quotation marks and citation omitted).

## III. DISCUSSION

### A.   The Compact Permits State Courts to Exercise Jurisdiction over Claims by Injured Casino Visitors

**{12}**   The Casino claims that the district court does not have jurisdiction over a claim based on Section 184 of the Pueblo Liquor Ordinance, 71 Fed. Reg. at 17,909, which provides a duty not to serve alcohol to intoxicated individuals, because of Section 191 of the Pueblo Liquor Ordinance, *id.* at 17,910.   Section 191 provides that any action premised on a violation of the Pueblo Liquor Ordinance "*shall* be brought in the Tribal Court of the Pueblo, which court shall have *exclusive* jurisdiction thereof."   *Id.* at 17,910 (emphasis added).   In light of this provision, we must determine whether our state courts have jurisdiction to hear Respondents' case before we reach the merits of the appeal.

**{13}**   Respondents maintain that by virtue of the Compact our state courts can properly exercise jurisdiction.   They explain that the Pueblo consented to be sued by casino visitors in state courts in exchange for gaming privileges.   Section 8(D) of the Compact provides that the Pueblo "waives its defense of sovereign immunity in connection with any claims for compensatory damages for bodily injury or property damage."   Section 8(A) of the Compact states that such claims "may be brought in *state district court*" even if the claims arose on tribal land.   (Emphasis added.)   Relying on *Doe*, 2007-NMSC-008, ¶ 47, Respondents further argue that we deemed enforceable the provisions of the Compact permitting tribes to be sued in state court, and therefore the Pueblo "cannot nullify a negotiated provision of the Compact (agreeing to be sued in [state] court) by . . . enacting a non-negotiated term (exclusive jurisdiction) in its ordinances negating it."   (Alteration in original.)

**{14}**   We briefly note that there is a dispute among the parties as to which version of the Compact is applicable to this appeal.   Respondents quote from the form Compact found at NMSA 1978, Section 11-13-1 (1997).   The Casino maintains that a latter version, which took effect in 2001, is the applicable law.   We agree and apply the 2001 Compact here.   *See R & R Deli v. Santa Ana Star Casino*, 2006-NMCA-020, ¶¶ 16-17, 139 N.M. 85, 128 P.3d 513 (holding that the 2001 Compact was duly enacted and superceded the prior version of the Compact even though the prior version is still found at Section 11-13-1).

**{15}**   The Compact provides for state court jurisdiction for a discrete set of claims:   those brought by persons who suffer "bodily injury or property damage proximately caused by the conduct of" the tribal entity authorized to conduct gaming pursuant to the Compact.   In *Doe*, we considered whether these "jurisdiction shifting" provisions were enforceable.   2007-NMSC-008, ¶ 4.   We concluded that they were enforceable and permitted the casino visitors' personal injury claims to go forward in district court.   *Id.* ¶¶ 47-48.   Thus, pursuant to the Compact, our state courts properly exercise jurisdiction over casino visitors' personal injury

5

claims. Moreover, a prior version of the Pueblo Liquor Ordinance, which included a provision reserving exclusive jurisdiction to tribal courts, was adopted in 1995, before the Pueblo entered into the Compact with the State in 1997. *See* Santa Ana Pueblo Liquor Code, 61 Fed. Reg. 41,172, 41,172 (Aug. 7, 1996) (noting that the ordinance was duly adopted by the tribal council on May 2, 1995); *id.* at 41,177 (lodging exclusive jurisdiction in tribal court over actions pertaining to the ordinance); *see also Gallegos*, 2002-NMSC-012, ¶¶ 11-22 (noting that the 1995 Compact was deemed invalid by state and federal courts); Notice of Tribal-State Gaming Compact Taking Effect, 62 Fed. Reg. 59,878, 59,878 (Nov. 5, 1997) (providing public notice that the 1997 Compact was approved by the Secretary of the Interior as required by the Indian Gaming Regulatory Act). The fact that the exclusive jurisdiction provision was in effect before the Pueblo entered into the Compact with the State suggests that the Pueblo knowingly relinquished jurisdiction. *See generally Doe*, 2007-NMSC-008, ¶ 18; *Gallegos*, 2002-NMSC-012, ¶ 7. Accordingly, by virtue of Section 8 of the Compact, the Pueblo unambiguously agreed to proceed in state court for claims involving injuries proximately caused by the conduct of the Casino. Because we conclude that our courts have jurisdiction to hear Respondents' claim, we proceed to the merits of the appeal.

**B.      Status of Common Law Dram Shop Claims Following Enactment of Section 41-11-1**

{16}      Having determined that state court jurisdiction is proper, we next address whether Respondents stated a claim upon which relief may be granted. Respondents seek to impose liability on the Casino as a result of both Michael's and Desiree's deaths. The complaint does not state which of the siblings was driving the vehicle at the time of the crash, but we do not consider this a fatal flaw. *See Petty v. Bank of N.M. Holding Co.*, 109 N.M. 524, 526-27, 787 P.2d 443, 445-46 (1990) ("Under our rules of 'notice pleading,' it is sufficient that defendants be given only a fair idea of the nature of the claim asserted against them sufficient to apprise them of the general basis of the claim; specific evidentiary detail is not required at this stage . . . ."); *Mendoza,* 2010-NMCA-074, ¶ 13. We construe the complaint as alleging a common law third-party claim with respect to the passenger of the vehicle involved in the fatal crash, and a common law patron claim with respect to the driver of the vehicle. We now proceed to determine whether our common law recognizes such claims following the Legislature's enactment of Section 41-11-1. We begin with third-party claims.

**1. Respondents' Complaint States a Third-Party Claim**

{17}      At the outset of our analysis, we examine the effect of Section 41-11-1, which codified, at least partially, dram shop liability in this state. As discussed below, the parties disagree whether Section 41-11-1 completely preempted common law dram shop liability. The common law scheme which operated prior to the enactment of Section 41-11-1 provides a backdrop to our statutory interpretation, so we begin our discussion there.

{18}      We first recognized a common law action in favor of a third party injured by the tavernkeeper's over service of alcohol to a patron in *Lopez v. Maez*, 98 N.M. 625, 631, 651

P.2d 1269, 1275 (1982). There, we examined the history of dram shop liability and concluded that traditionally the "common law imposes no liability on the seller of intoxicating liquor for damages that resulted from the intoxication of a patron." *Id.* at 628, 651 P.2d at 1272. We noted that many states had adopted statutes in order to change the existing common law, such that it permitted an action against the tavernkeeper; however, no such statute existed in New Mexico. *Id.* Even though our Legislature had not acted to change the common law, we held that the traditional common law view that the tavernkeeper was not liable for a third party's injuries from an intoxicated patron was outmoded, and that it was within the province of the judiciary to change the common law. *Id.* at 629-30, 651 P.2d at 1273-74. Therefore, we validated a common law action premised upon breach of a statutory or regulatory duty not to serve alcohol to an intoxicated patron. *See id.* at 631, 651 P.2d at 1275.

{19}    In *Lopez*, we noted that the statute providing a duty not to serve alcohol, NMSA 1978, Section 60-10-27 (repealed 1981), "[did] not define or qualify the type of person who sells, serves or gives any alcoholic liquor." *Lopez*, 98 N.M. at 631, 651 P.2d at 1275. Section 60-10-27 was repealed by NMSA 1978, Section 60-7A-16 (1981) (as amended through 1993), the version currently in force. Section 60-7A-16 delineates a duty not to serve alcohol to intoxicated individuals, and akin to its predecessor, it is a broadly applicable duty, which does not limit or qualify the person who serves the liquor. Specifically, Section 60-7A-16 provides:

> It is a violation of the Liquor Control Act . . . for a *person* to sell or serve alcoholic beverages to or to procure or aid in the procurement of alcoholic beverages for an intoxicated person if the person selling, serving, procuring or aiding in procurement, knows or has reason to know that he is selling, serving, procuring or aiding in procurement of alcoholic beverages for a person that is intoxicated.

(Emphasis added.) Thus, the common law action was premised upon a broad duty, applicable to any "*person*" who sold or served alcohol.

{20}    In 1983, however, the Legislature enacted Section 41-11-1, which provides a statutory cause of action applicable to a tavernkeeper who is licensed to serve liquor under New Mexico law. *See* 1983 N.M. Laws, ch. 328, § 1(A), (C); § 41-11-1(A), (D)(1) (version in force). The Legislature made Section 41-11-1 the exclusive remedy for breach of Section 60-7A-16 by a licensee which, as mentioned above, provides a broad duty not to serve alcohol to intoxicated persons. *See* § 41-11-1(H) ("No person may seek relief in a civil claim against a licensee or a social host for injury or death or damage to property which was proximately caused by the sale, service or provision of alcoholic beverages except as provided in this section.").

{21}    We note that, in this case, Respondents cannot proceed under Section 41-11-1 because the Casino is not a "licensee" within the meaning of the section. Section 41-11-

7

1(D)(1) defines a licensee as "a person licensed under the provisions of the Liquor Control Act and the agents or servants of the licensee." The Casino does not fall within this definition because it is not licensed to sell liquor under New Mexico law; rather, it is licensed by the Pueblo. Thus, the Court of Appeals addressed whether the common law cause of action, originally recognized in *Lopez*, survived subsequent legislative enactments, namely Section 41-11-1. The Court concluded that "there is a recognized common law cause of action for an injured, third-party passenger." *Mendoza,* 2010-NMCA-074, ¶ 19.

**{22}** The Casino contests this conclusion, arguing that Section 41-11-1 provides an exclusive remedy against tavernkeepers, such that there can be no common law alternative. The Casino argues that if there is a common law alternative to Section 41-11-1, then Section 41-11-1's limitations on dram shop liability are rendered meaningless, and therefore urges that we reverse the Court of Appeals.

**{23}** In response, Respondents maintain that when the Legislature codified dram shop liability it limited the scope of the legislation as to licensees; however, it did not "abolish a cause of action." *Baxter v. Noce*, 107 N.M. 48, 50, 752 P.2d 240, 242 (1988). Respondents also point out that the original common law cause of action recognized in *Lopez* was based on the duty derived from the "broadly worded" Section 60-7A-16, which is applicable to *persons*, not just licensees. *See* § 60-7A-16 (prohibiting any "*person*" from serving alcohol to intoxicated individuals (emphasis added)). Thus, Respondents argue that Section 41-11-1 is the exclusive remedy against *licensees*; however, it is not the exclusive remedy against non-licensees, such as the Casino. Respondents claim that the Legislature could have chosen to make Section 41-11-1 applicable to *any person*, but it did not elect to do so. Accordingly, Respondents argue that this Court should affirm the judgment of the Court of Appeals, recognizing a common law cause of action for injured third-parties.

**{24}** In order to determine whether Section 41-11-1 preempts common law third-party claims, we first examine the plain language of the statute. *Oldham*, 2011-NMSC-007, ¶ 10. Section 41-11-1 applies to *licensees. See* § 41-11-1(A), (H). As discussed above, a "licensee" is "a person licensed under the provisions of the Liquor Control Act and the agents or servants of the licensee." Section 41-11-1(D)(1). Therefore, the plain language of Section 41-11-1 limits its reach to those individuals licensed pursuant to the Liquor Control Act; it is not applicable to all individuals. *See* § 41-11-1(A), (D), (H). Subsection H provides that no person may maintain a civil claim "against a *licensee* . . . except as provided in this section." Section 41-11-1(H) (emphasis added). Similarly, Subsection A limits its reach to licensees; it provides that "[n]o civil liability shall be predicated upon the breach of Section 60-7A-16 . . . by a *licensee*, except in the case of the *licensee*" who serves alcohol to an intoxicated individual. Section 41-11-1(A)(1) (emphasis added). Because Section 41-11-1 explicitly limits its scope to licensees, we conclude that it only supplanted the common law cause of action against *licensees*. It did not change the common law's recognition of third-party claims against non-licensees. Because the Casino is not a "licensee," Respondents may pursue a common law third-party claim.

8

**{25}** Our interpretation is confirmed by our prior cases. As discussed above, in *Lopez*, we modified the common law so as to permit an injured third party to maintain an action against a tavernkeeper. 98 N.M. at 632, 651 P.2d at 1276. Following *Lopez*, the Legislature enacted Section 41-11-1 in 1983. *See* 1983 N.M. Laws, ch. 328, § 1 (enacting section later codified as Section 41-11-1). We had the opportunity to examine the 1983 version of Section 41-11-1 in *Baxter*, 107 N.M. at 50, 752 P.2d at 242. There, we concluded that Section 41-11-1 "did not create or abolish a cause of action; instead it narrowed the liability of tavernkeepers . . . and set out the elements which would constitute a breach of the duty established in [*Lopez*]." *Baxter*, 107 N.M. at 50, 752 P.2d at 242. Therefore, according to *Baxter*, Section 41-11-1 did not supplant the common law cause of action originally recognized in *Lopez*. Our interpretation of Section 41-11-1 places it in harmony with *Lopez* and *Baxter*.

**{26}** Because Section 41-11-1 does not preempt all common law claims, our common law permits a third-party claim against a tavernkeeper. Accordingly, we hold that the factual allegations in Respondents' complaint are sufficient to state a third-party common law claim with respect to the passenger of the vehicle.

## 2. Respondents' Complaint States a Patron Claim

**{27}** We next address whether the common law permits patron claims, which are those brought by an intoxicated patron to recover for his own injuries. Section 41-11-1(B) permits a patron action against a "licensee" where the "licensee is determined to have acted with gross negligence and reckless disregard for the safety of the person who purchased or was served the alcoholic beverages." As we have previously noted, Respondents may not proceed under the statutory cause of action provided in Section 41-11-1(B) because the Casino is not a "licensee." Therefore, for Respondents' complaint to state a claim upon which relief may be granted, it must do so pursuant to a common law patron action.

**{28}** In our discussion above, we concluded that the plain language of Section 41-11-1 limits its reach to licensees, and as a result, the section does not preempt all common law third-party claims. This analysis of Section 41-11-1 is equally applicable as to common law patron claims, and therefore, we need not restate it here. Rather, we proceed from the conclusion that Section 41-11-1 does not supplant all common law claims.

**{29}** Even though we have settled that the enactment of Section 41-11-1 did not preempt all common law claims, there remains an important issue for our consideration. We must address whether our common law recognizes patron claims. Our opinion in *Lopez*, which was issued prior to the enactment of Section 41-11-1, recognized a common law cause of action in favor of third parties. *Lopez*, 98 N.M. at 632, 651 P.2d at 1276. Accordingly, in our consideration of whether Section 41-11-1 preempts third-party claims, we were able to proceed knowing that the background principles of our common law supported a cause of action for third parties. We are unable to proceed in such fashion here; we did not have occasion to address the existence of a common law patron cause of action prior to the enactment of Section 41-11-1.

**{30}** The Court of Appeals concluded that our common law recognizes a patron cause of action. *Mendoza*, 2010-NMCA-074, ¶¶ 20-22. The Court analyzed the Casino's duty pursuant to Section 184 of the Pueblo Liquor Ordinance and determined that the Casino owed a duty to patrons. *Mendoza*, 2010-NMCA-074, ¶ 22. In determining that the Casino owed a duty to patrons, the Court relied upon the Compact's policy concern of casino visitor protection, noting that the Compact specifies that "safety and protection of visitors" is a priority of the Pueblo. *Mendoza,* 2010-NMCA-074, ¶ 22 (internal quotation marks and citation omitted). Because the Court determined that the Casino's duty under the Pueblo Liquor Ordinance extended to patrons, it concluded that Respondents stated a claim upon which relief may be granted. *Mendoza,* 2010-NMCA-074, ¶ 22.

**{31}** The Casino disagrees with the Court's conclusion and submits that we should not adopt a common law patron action. The Casino argues that, if we were to adopt a common law patron action, *every* plaintiff would elect the less stringent common law theory, which presumably would require only proof of simple negligence, rather than Section 41-11-1(B)'s stricter requirement of "gross negligence and reckless disregard for the safety of the person who purchased or was served the alcoholic beverages" on the part of the alcohol purveyor. Alternatively, if the common law alternative to Section 41-11-1 *only* applies where the claimant proceeds against a tribal gaming facility, then the Casino argues there is a violation of equal protection—tribal facilities would be held to a much higher legal standard than non-tribal facilities.

**{32}** In *Lopez*, we recognized our ability to revise the common law when the policy concerns which undergirded a common law doctrine no longer reflected modern realities. 98 N.M. at 629-30, 651 P.2d at 1273-74. There, we noted it was within our province to elect not to "adhere to ancient common law doctrines when those doctrines [become] out of tune with today's society." *Id.* at 629, 651 P.2d at 1273. Thus, we revised the "outmoded" common law in order to permit an injured third party to pursue an action against the seller of liquor. *Id.* at 630, 632, 651 P.2d at 1274, 1276.

**{33}** Traditionally, the common law reflected a belief that patrons should not be able to seek relief from a tavernkeeper for injuries arising out of their intoxication. *Smith v. Sewell*, 858 S.W.2d 350, 352 (Tex. 1993). The rationale was that the "proximate cause of the injury was not the furnishing of the liquor, but the drinking of it." *Lopez*, 98 N.M. at 628, 651 P.2d at 1272. This view holds the patron alone responsible for injuries arising out of his liquor consumption and does not require the tavernkeeper to bear any responsibility.

**{34}** Just as we recognized in *Lopez* that the policy considerations concerning third-party claims were no longer valid, we recognize that the policy considerations concerning patron claims no longer stand on solid ground. Two factors lead to this conclusion. First, our statutory laws evidence a change in the prevailing view regarding the responsibility of the tavernkeeper. In 1985, the Legislature amended Section 41-11-1 to recognize a patron cause of action. *See* 1985 N.M. Laws, ch. 191, § 1(B). Pursuant to Section 41-11-1(B), a patron who is served alcohol while intoxicated and injured as a result may obtain relief from the

10

"licensee" who served him. As we have discussed, the statutory patron cause of action requires proof beyond simple negligence; the claimant must show that the licensee "acted with gross negligence and reckless disregard for the safety" of the patron. *Id.* This statute articulates a policy in favor of holding the tavernkeeper responsible for the patron's injuries, where it is clear that the tavernkeeper's actions were reckless. Thus, the Legislature's recognition of a patron cause of action undermines the common law's view that only the patron can be held responsible for injuries resulting from his alcohol consumption.

{35} Second, a patron cause of action can be a catalyst which promotes important social goals. New Jersey courts have recognized "the senseless havoc and destruction caused by intoxicated drivers" and have permitted a patron cause of action in order to discourage drunk driving. *See Voss v. Tranquilino*, 992 A.2d 829, 836 (N.J. Super. Ct. App. Div. 2010), *aff'd*, 19 A.3d 470 (N.J. 2010) (internal quotation marks and citation omitted). In our state, where tragedies too often result from drunk driving, this policy consideration certainly strikes a chord. *See, e.g.*, *State v. Roper*, 1996-NMCA-073, ¶ 17, 122 N.M. 126, 921 P.2d 322 (taking account of "severe drunk-driving problems in New Mexico").

{36} This important policy consideration, in conjunction with Section 41-11-1(B), persuades us that the common law's bar on patron actions does not reflect the realities of our modern times. *See Lopez*, 98 N.M. at 632, 651 P.2d at 1276 (revising outmoded common law doctrine). Accordingly, because Section 41-11-1 does not preempt all common law claims, we hold that the common law recognizes an action by a patron against a tavernkeeper for over service of alcohol.

{37} While the Court of Appeals concluded that the common law permitted a patron cause of action, it did not subject this patron cause of action to a more demanding standard akin to the requirements of Section 41-11-1(B) that the liquor licensee acted with "gross negligence and reckless disregard for the safety" of the patron. *Mendoza*, 2010-NMCA-074, ¶ 22. The common law must reflect modern policy considerations. These considerations are best encapsulated in the balance struck by our Legislature in Section 41-11-1(B), which allows a patron cause of action, yet demands proof of gross rather than simple negligence. We revise the common law and adopt the standard articulated in Section 41-11-1(B). Thus, the common law recognizes an action by an injured patron against a tavernkeeper who served the patron alcohol while intoxicated; in such an action, the claimant must show that the tavernkeeper acted with gross negligence and reckless disregard for the safety of the patron in order to recover. This standard ensures that the common law reflects modern policy considerations, and additionally, because the standard mirrors Section 41-11-1(B), it resolves the potential equal protection concerns brought to light by the Casino.

{38} We clarify the application of the distinct standards required by common law *third-party* claims as distinguished from common law *patron* claims. Because third-party claims require proof of simple negligence while patron claims require proof of gross negligence, it is necessary to distinguish who may seek relief as a third party and who must seek relief as a patron. Where, as here, an intoxicated passenger seeks relief, it may be unclear to courts

11

and litigants whether the intoxicated passenger should be treated as a patron or as an injured third party.

**{39}** We construe Respondents' complaint as alleging a third-party claim with respect to the intoxicated passenger. We do so based on *Baxter* and *Murphy v. Tomada Enterprises, Inc.*, 112 N.M. 800, 819 P.2d 1358 (Ct. App. 1991). Both *Baxter* and *Murphy* involve claims by intoxicated passengers—individuals who drank liquor and were subsequently injured when they rode as passengers in vehicles driven by their drinking partners. *Baxter*, 107 N.M. at 48, 752 P.2d at 240; *Murphy*, 112 N.M. at 801, 819 P.3d at 1359. In *Baxter*, we permitted the intoxicated passenger's claim to proceed on the basis that she "was an injured third party in relation to" the tavern. 107 N.M. at 50, 752 P.2d at 242. Similarly, in *Murphy*, the Court of Appeals treated an intoxicated passenger's cause of action as a third-party claim. 112 N.M. at 802, 819 P.3d at 1360.

**{40}** *Murphy* made clear that the proximate cause of the plaintiff's injuries is the key element which distinguishes a patron claim from a third-party claim. *See id.* (noting that the statutory patron claim, found in Section 41-11-1(B), extends only to injuries "proximately caused by the patron's own intoxication, not by the intoxication of another patron"). *Murphy* made this distinction in the context of statutory dram shop claims—those maintainable against licensees pursuant to Section 41-11-1.

**{41}** The Casino expresses concerns regarding disparate treatment between non-licensee taverns, which are subject to common law dram shop claims, and "licensee" taverns, which are subject to statutory claims under Section 41-11-1. However, if the common law dram shop claim mirrors the statutory claim, no potential for disparate treatment exists—non-licensee taverns will be subject to the same standards as "licensee" taverns. Thus, in order to ensure that common law claims mirror statutory claims, we extend *Murphy*'s rationale to the common law context.

**{42}** Therefore, a passenger sues as a third party, whether under Section 41-11-1 or the common law. The passenger must prove that the tavern was negligent and that the passenger's damages were proximately caused by the tavern. An intoxicated driver sues as a patron, whether under Section 41-11-1 or the common law. The intoxicated driver must prove that the tavern acted with gross negligence and in reckless disregard of the driver's safety and that the driver's damages were proximately caused by the tavern. Accordingly, the factual allegations in the complaint regarding the driver are sufficient to state a patron claim.

## III. CONCLUSION

**{43}** We hold that the district court had jurisdiction. We further hold that Section 41-11-1 did not displace all common law dram shop claims. Apart from the statutory claims permitted by Section 41-11-1, our common law recognizes two types of dram shop claims against non-licensee tavernkeepers who serve alcohol to intoxicated patrons: a claim in

12

favor of injured third parties upon traditional negligence principles and a claim in favor of patrons upon proof that the tavernkeeper acted with gross negligence and reckless disregard for the safety of the patron. We remand to the district court for further proceedings consistent with this Opinion.

**{44}    IT IS SO ORDERED.**

_____
**PETRA JIMENEZ MAES, Justice**

**WE CONCUR:**

_____
**CHARLES W. DANIELS, Chief Justice**

_____
**PATRICIO M. SERNA, Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

**Topic Index for _Mendoza v. Tamaya Enters., Inc._, Docket No. 32,447**

| | |
|---|---|
| **GV** | **GOVERNMENT** |
| GV-LA | Liquor Control Act |
| GV-SI | Sovereign Immunity |
| | |
| **IL** | **INDIAN LAW** |
| IL-TC | Tribal Court Jurisdiction |
| IL-TJ | Tribal and State Authority and Jurisdiction |
| | |
| **JD** | **JURISDICTION** |
| JD-JG | Jurisdiction, General |
| | |
| **NG** | **NEGLIGENCE** |
| NG-NG | Negligence, General |
| NG-CL | Common Law Negligence |
| | |
| **ST** | **STATUTES** |
| ST-AP | Applicability |
| ST-IP | Interpretation |

**TR**                  **TORTS**

TR-TK                Tavernkeeper's and Social Host's Liability