# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2022-NMCA-015

Filing Date: December 8, 2021

No. A-1-CA-36924

JEREMIAH SIPP a/k/a SAGE RADER,
and HELLA RADER,

      Plaintiffs-Appellants,

v.

BUFFALO THUNDER, INC.; BUFFALO
THUNDER DEVELOPMENT AUTHORITY;
PUEBLO OF POJOAQUE; PUEBLO OF
POJOAQUE GAMING COMMISSION; and
POJOAQUE GAMING, INC.,

      Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**David K. Thomson, District Judge**

Certiorari Granted, February 8, 2022, No. S-1-SC-39169. Released for Publication March 22, 2022.

Valdez and White Law Firm, LLC
Timothy L. White
Albuquerque, NM

for Appellants

Rey-Bear McLaughlin, LLP
Daniel I.S.J. Rey-Bear
Spokane, WA

for Appellees

## OPINION

**DUFFY, Judge.**

**{1}** Plaintiff Jeremiah Sipp sued the Pueblo of Pojoaque and several Pueblo-owned entities in New Mexico state district court after he was injured at the Buffalo Thunder

Resort and Casino. The district court dismissed the case for lack of subject matter jurisdiction, ruling that Sipp did not fall within the limited waiver of sovereign immunity contained in the Pueblo's Tribal-State Class III Gaming Compact. We reverse.

**BACKGROUND**

**{2}**    Sipp (also known as Sage Rader) was an employee of Dial Electric, a vendor that sold lights to Buffalo Thunder for the facility's parking lot. Sipp delivered the lights and alleged that while he was moving in and out of a receiving area, a Buffalo Thunder employee abruptly lowered a garage door, causing Sipp to hit his head. Sipp claimed that he was knocked unconscious and suffered severe injuries, including a cervical spine injury that required major surgery.

**{3}**    Buffalo Thunder is operated by the Pueblo of Pojoaque pursuant to a Tribal-State Class III Gaming Compact with the State of New Mexico, as required by the federal Indian Gaming Regulatory Act (IGRA), 25 U.S.C. §§ 2701 to 2721. Section 8(A) of the Compact addresses subject matter jurisdiction over claims for "bodily injury or property damage proximately caused by the conduct of the Gaming Enterprise" and contains both a waiver of sovereign immunity for such claims and an express agreement to state court jurisdiction.

**{4}**    Sipp and his wife, Hella Rader, filed a complaint for damages in state district court, naming Buffalo Thunder, Inc., Buffalo Thunder Development Authority, the Pueblo of Pojoaque, the Pueblo of Pojoaque Gaming Commission, and Pojoaque Gaming, Inc. as Defendants. Plaintiffs sought damages for Sipp's injuries and for Hella Rader's derivative tort claims. Defendants filed a motion to dismiss for lack of subject matter jurisdiction under Rule 1-012(B)(1) NMRA, arguing that the Pueblo's sovereign immunity precluded the district court from hearing the suit and that the limited waiver of sovereign immunity in Section 8(A) of the Compact was inapplicable in the present case.

**{5}**    The district court held a hearing and issued a brief order finding that Plaintiffs' allegations did not fall within Section 8(A)'s immunity waiver. The court dismissed the case, concluding that "Plaintiffs have not established an express abrogation or waiver of Defendants' sovereign immunity as required to establish subject matter jurisdiction here." Plaintiffs appeal.

**DISCUSSION**

**{6}**    Plaintiffs contend the district court erred in granting Defendants' motion to dismiss because Section 8(A) of the Compact expressly waives sovereign immunity and provides for state court jurisdiction over Plaintiffs' claims. Section 8(A), entitled "Protection of Visitors," states:

>    The safety and protection of visitors to a Gaming Facility is a priority of the
>    Tribe, and it is the purpose of this Section to assure that any such persons

who suffer bodily injury or property damage proximately caused by the conduct of the Gaming Enterprise have an effective remedy for obtaining fair and just compensation. To that end, in this Section, and subject to its terms, the Tribe agrees to carry insurance that covers such injury or loss, agrees to a limited waiver of its immunity from suit, and agrees to proceed either in binding arbitration proceedings or in a court of competent jurisdiction, at the visitor's election, with respect to claims for bodily injury or property damage proximately caused by the conduct of the Gaming Enterprise. For purposes of this Section, any such claim may be brought in state district court, including claims arising on tribal land, unless it is finally determined by a state or federal court that IGRA does not permit the shifting of jurisdiction over visitors' personal injury suits to state court.

*See also Doe v. Santa Clara Pueblo*, 2007-NMSC-008, ¶¶ 7-8, 141 N.M. 269, 154 P.3d 644 (holding that under Section 8(A), the Pueblos consented to state court jurisdiction and waived sovereign immunity for personal injury claims concerning visitor safety unless IGRA does not permit it); *Guzman v. Laguna Dev. Corp.*, 2009-NMCA-116, ¶ 17, 147 N.M. 244, 219 P.3d 12 (stating that there is no question that this section "create[s] an express and unequivocal waiver under the Compact").

**{7}** Defendants argue that Section 8(A) does not permit the district court to exercise jurisdiction in this case for two reasons. First, Defendants assert that the termination clause at the end of Section 8(A) was triggered by two federal court decisions, *Pueblo of Santa Ana v. Nash*, 972 F. Supp. 2d 1254 (D.N.M. 2013) (memorandum and order), and *Navajo Nation v. Dalley*, 896 F.3d 1196 (10th Cir. 2018), such that Section 8(A) no longer provides for state court jurisdiction. Second, Defendants claim that Sipp does not qualify as a visitor to a gaming facility under Section 8(A) because (1) he had a business purpose for visiting Buffalo Thunder and not a gaming purpose, and (2) he was not injured in a "gaming facility." We conclude that the termination clause has not been triggered and, applying New Mexico precedent interpreting Section 8(A), hold that Plaintiffs' amended complaint sufficiently pleaded claims that fall within the Compact's waiver of sovereign immunity for visitors to a gaming facility.

## I.      Standard of Review

**{8}** "In reviewing an appeal from an order granting or denying a motion to dismiss for lack of jurisdiction, the determination of whether jurisdiction exists is a question of law which an appellate court reviews de novo." *Gallegos v. Pueblo of Tesuque*, 2002-NMSC-012, ¶ 6, 132 N.M. 207, 46 P.3d 668. We apply the same standard to a determination of tribal sovereign immunity. *Kosiba v. Pueblo of San Juan*, 2006-NMCA-057, ¶ 7, 139 N.M. 533, 135 P.3d 234. "For purposes of a motion to dismiss, we accept all well-pleaded facts as true and question whether the plaintiff might prevail under any state of facts provable under the claim." *Guzman*, 2009-NMCA-116, ¶ 16 (internal quotation marks and citation omitted).

## II.      The Compact's Termination Clause

**{9}** The threshold issue is whether the termination clause in Section 8(A) was triggered by federal court decisions in *Nash* or *Dalley*. The termination clause states, "For purposes of this Section, any [personal injury] claim may be brought in state district court, including claims arising on tribal land, *unless it is finally determined by a state or federal court that IGRA does not permit the shifting of jurisdiction over visitors' personal injury suits to state court.*" (Emphasis added.)[1] Because neither *Nash* nor *Dalley* finally determined that IGRA does not permit jurisdiction shifting over personal injury suits, we hold that the termination clause has not been triggered and the jurisdiction-shifting provision remains in force.

**{10}** In *Nash*, the Pueblo of Santa Ana brought an action in federal court seeking a declaration that a New Mexico state court lacked subject matter jurisdiction over a wrongful death claim against the Pueblo. 972 F. Supp. 2d at 1257-58. The underlying lawsuit alleged that three people died in a car crash after being over-served alcohol at the Santa Ana Star Casino. *Id.*; *see also Mendoza v. Tamaya Enters., Inc.*, 2011-NMSC-030, 150 N.M. 258, 258 P.3d 1050 (underlying state case). In the state court proceedings, the Pueblo of Santa Ana challenged the state court's jurisdiction to hear the case under Section 8 of the Compact. On appeal, the New Mexico Supreme Court held that Section 8 waived immunity and permitted jurisdiction in state court. *Nash*, 972 F. Supp. 2d at 1258 (citing *Mendoza*, 2011-NMSC-030, ¶¶ 3, 15). After remand, the Pueblo of Santa Ana filed a declaratory judgment action in federal court seeking to enjoin the state district court judge from exercising jurisdiction over the case. *Id.*

**{11}** *Nash* noted that Congress may provide express authorization to shift jurisdiction, but reasoned that the plain language of IGRA only permits a tribe to allocate jurisdiction to state courts for the enforcement of laws directly related to the licensing and regulation of class III gaming. *Id.* at 1264. Applying that standard, the court concluded that IGRA does not authorize an allocation of jurisdiction in state court for a wrongful death claim arising from the negligent serving of alcohol because the litigation did not involve licensing or regulation of Indian gaming activities. *Id.* at 1267. However, the court specifically restricted its judgment to "the type of personal injury claim involved in the underlying court case (*i.e.*, a claim arising from the allegedly negligent serving of alcohol on Indian land)." *Id.*

**{12}** Similarly, in *Dalley*, the Tenth Circuit Court of Appeals considered whether a tort claim occurring within a Navajo Nation casino could be heard in New Mexico state court under Section 8(A) of the Compact. *Dalley*, 896 F.3d at 1200. The underlying state lawsuit arose when a man slipped and "fell on a wet bathroom floor in the Navajo

---

[1]The relevant portion of IGRA, 25 U.S.C. § 2710(d)(3)(C), states:

Any Tribal-State compact negotiated under subparagraph (A) may include provisions relating to—

    (i)    the application of the criminal and civil laws and regulations of the Indian tribe or the State that are directly related to, and necessary for, the licensing and regulation of [Class III gaming activity];

    (ii)    the allocation of criminal and civil jurisdiction between the State and the Indian tribe necessary for the enforcement of such laws and regulations;

    . . . .

    (vii)    any other subjects that are directly related to the operation of gaming activities.

Northern Edge Casino." *Id.* at 1202. The procedural posture of the case mirrored *Nash*: the plaintiffs filed suit against the Navajo Nation in state court and defeated the defendants' motion to dismiss for lack of subject matter jurisdiction, at which point the defendants filed for injunctive relief in federal court. *Dalley*, 896 F.3d at 1202-03. After the federal district court denied the defendants' requested relief, they appealed, and the Tenth Circuit addressed the same substantive question raised in *Nash*—whether IGRA permitted the Pueblo of Santa Ana to shift jurisdiction for personal injury claims not directly related to gambling activity. *Dalley*, 896 F.3d at 1203. The Tenth Circuit reasoned that IGRA authorized tribes to shift jurisdiction for tort claims to state court only when the claims arose from gaming activity—i.e. "the stuff involved in *playing* class III games." *Dalley*, 896 F.3d at 1207 (quoting *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 792 (2014)). The Tenth Circuit concluded that the slip-and-fall on a wet bathroom floor—an act that involved no class III gaming activity—could not be heard in state court because IGRA did not authorize the Navajo Nation to shift jurisdiction for the claim. *Id.* at 1218.

{13}   Like *Nash*, the Tenth Circuit's opinion in *Dalley* was narrow. The court confined its holding to the circumstances presented in the case: a personal injury tort claim arising in a tribal casino but unrelated to the actual playing of class III games. *Dalley*, 896 F.3d at 1210 n.7. The court went on to state, "[W]e do not intend . . . to categorically negate the possibility that certain classes of tort or personal-injury claims stemming from conduct on Indian land might conceivably satisfy the statutory conditions for tribal allocation of jurisdiction to the states under . . . IGRA." *Id.*; *see also id.* at 1209 ("While we are comfortable assuming that tort, and more specifically personal-injury lawsuits, constitute a type of regulation, we are unable to discern how applying this form of regulation to a slip-and-fall event, like [the plaintiff]'s, is 'directly related to, and necessary for the licensing and regulation,' of Class III gaming activity, as *Bay Mills* conceives of it." (citation omitted)). This language leaves the door open to other tort claims directly related to class III gaming.

{14}   Because both *Nash* and *Dalley* explicitly restricted their holdings to their case-specific facts, and both cases left open the possibility that IGRA permits jurisdiction shifting for tort claims under different circumstances, neither can be said to have "finally determined . . . that IGRA does not permit the shifting of jurisdiction over visitors' personal injury suits to state court." Accordingly, under the plain language of the Compact, the jurisdiction-shifting provision has not terminated by its own terms, and the district court in this case was not stripped of subject matter jurisdiction on these grounds.

{15}   We also reject Defendants' argument that the United States Supreme Court's decision in *Bay Mills*, 572 U.S. 782, requires us to adopt a similar view of the extent to which IGRA allows tort-claim jurisdiction shifting. The holding in *Bay Mills* was limited to the question of whether a different IGRA provision, § 2710(d)(7)(A)(ii), abrogates a tribe's sovereign immunity for "class III gaming activity" conducted off Indian lands. *Bay Mills*, 572 U.S. 785-86. The State of Michigan alleged that the Bay Mills Indian Community had tried to open a casino outside of Indian land and sought an injunction in

federal court under § 2710(d)(7)(A)(ii), which vests United States district courts with jurisdiction over causes of action to enjoin class III gaming activity on Indian lands in violation of any Tribal-State compact. *Bay Mills*, 572 U.S. at 787. Michigan argued that even though the casino was not located on Indian land, the Tribe operated and administered the casino from within its own reservation, thereby engaging class III gaming activity on Indian land. *Id.* at 791-92. The United States Supreme Court rejected Michigan's argument, holding that offsite administration of class III gaming did not constitute "gaming activity" for purposes of § 2710(d)(7)(A)(ii). *Bay Mills*, 572 U.S. at 791-92. While the Supreme Court explained that "numerous provisions of IGRA show that 'class III gaming activity' means just what it sounds like—the stuff involved in playing class III games[,]" *id.* at 792, the Court did not pass upon the question addressed by *Dalley* and *Nash*—"whether IGRA permits an Indian tribe to allocate jurisdiction over a tort claim arising on Indian land to a state court[.]" *Dalley*, 896 F.3d at 1200; *Nash*, 972 F. Supp. 2d at 1264. Consequently, *Bay Mills* is not dispositive of the question before us. We continue to adhere to our Supreme Court's decision in *Doe* and its holding that IGRA does not prevent the tribes from negotiating the choice of law or venue for personal injury suits against casinos. 2007-NMSC-008, ¶ 47.[2]

### III. Sipp's Status as a "Visitor"

{16}     We turn now to whether Sipp sufficiently alleged claims that fall within the Compact's immunity-waiver for visitors to a gaming facility. Defendants focus on the business purpose of Sipp's visit to Buffalo Thunder, arguing that the immunity-waiver only applies to casino patrons and not persons on the premises for other purposes. Defendants also assert that the waiver is inapplicable because Sipp was not injured in a gaming facility. We hold that Sipp's status as a visitor was sufficiently pleaded.

### A. Plaintiffs Sufficiently Alleged Sipp Was a Visitor Under the Compact

{17}     Plaintiffs urge us to evaluate Sipp's status as a visitor using the longstanding definition set forth in UJI 13-1302 NMRA, which states that "[a] visitor is a person who enters or remains upon the premises with the [express or implied] permission of the [owner or occupant] of the premises." *See also* UJI 13-1302 comm. cmt. (noting that in *Ford v. Bd. of Cnty. Comm'rs*, 1994-NMSC-077, 118 N.M. 134, 879 P.2d 766, our Supreme Court "eliminated the distinction, for purposes of defining the landowner's duty of care, between licensees and business visitors or invitees"). However, this Court has twice considered the term "visitor" as used in Section 8(A) and concluded that the drafters of the Compact intended a more limited usage that excludes business entities

---

2Defendants recognize that their interpretation of *Bay Mills* conflicts with decisions from our Supreme Court and ask us to "limit the prior rulings in *Doe* and *Mendoza*." Even if we agreed that *Bay Mills* was on point, we could not depart from *Doe*, as "[a]ppeals in this Court are governed by the decisions of the New Mexico Supreme Court—including decisions involving federal law, and 'even when a United States Supreme Court decision seems contra.' " *Dalton v. Santander Consumer USA, Inc.*, 2015-NMCA-030, ¶ 30, 345 P.3d 1086, *rev'd on other grounds*, 2016-NMSC-035, 385 P.3d 619; *see also State ex rel. Martinez v. City of Las Vegas*, 2004-NMSC-009, ¶ 20, 135 N.M. 375, 89 P.3d 47; *State v. Manzanares*, 1983-NMSC-102, ¶ 3, 100 N.M. 621, 674 P.2d 511 (citing *Alexander v. Delgado*, 1973-NMSC-030, 84 N.M. 717, 507 P.2d 778); *State v. Darkis*, 2000-NMCA-085, ¶ 10, 129 N.M. 547, 10 P.3d 871.

who enter into business transactions with the Pueblo. *See Guzman*, 2009-NMCA-116, ¶ 16 ("Business entities who enter into business transactions with the Pueblo are not considered visitors to whom the waiver applies." (internal quotation marks and citation omitted)); *R & R Deli, Inc. v. Santa Ana Star Casino*, 2006-NMCA-020, ¶ 24, 139 N.M. 85, 128 P.3d 513 (noting that the plaintiff, a restaurant business, fell within the definition of "visitor" in UJI 13-1302, but that the term "visitor" as used in Section 8(A) of the Compact was not intended to include business entities). This Court's distinction between individual and entity claims in those cases forms the crux of the dispute in this appeal.

{18}   We addressed entity claims in *R & R Deli, Inc.* There, the plaintiff, a restaurant business, had entered a lease with Tamaya Enterprises, Inc. that allowed the plaintiff to operate a restaurant in a casino owned by the Pueblo of Santa Ana and required the plaintiff to maintain a Pueblo-issued liquor license. 2006-NMCA-020, ¶¶ 2, 5. After one year of operation, the Pueblo refused to renew the liquor license, essentially terminating the lease. *Id.* ¶ 5. The plaintiff sued, alleging breach of contract and a variety of business torts. *Id.* ¶ 6. The defendants filed a motion to dismiss that argued the Compact did not waive sovereign immunity for the lawsuit. *Id.* The district court granted the motion and dismissed the complaint. *Id.* On appeal, this Court affirmed, holding that the plaintiff was not a visitor under the Compact. *Id.* ¶ 19. Noting that the language used in Section 8 refers to the types of claims it encompasses as "personal injury" claims, this Court concluded that the waiver provision was unambiguous and was geared toward casino patrons and guests who suffer physical injuries to their person or property, not business entities or corporations who enter into business transactions with the Pueblo. *Id.* ¶¶ 21-25. This Court also agreed with the Pueblo's asserted policy rationale for that distinction—that business entities could negotiate their terms of entry onto a gaming facility premises in order to protect their own interests, while ordinary persons could not. *Id.* ¶ 25.

{19}   Three years later, this Court considered whether a casino employee could be a "visitor" within the meaning of the Compact. *Guzman*, 2009-NMCA-116, ¶ 19. In *Guzman*, the plaintiffs filed a wrongful death lawsuit after their son, Anthony, was killed in a car accident on his way home from work as an employee of a gift shop on the casino premises. *Id.* ¶¶ 1, 3. On the night of his death, Anthony consumed alcohol during his shift that had been purchased by his manager, and after clocking out, stayed to talk with his manager for about half an hour. *Id.* ¶ 3. The defendants filed a motion for judgment on the pleadings, arguing that "as an employee, [Anthony] could not be a 'visitor' within the meaning of the Compact" and that his "status was not converted to that of a visitor during the time he remained on the premises after clocking out because he stayed for a business purpose, to discuss a potential promotion." *Id.* ¶¶ 17, 19. The district court agreed and dismissed the case. *Id.* ¶¶ 1, 17. This Court reversed, holding that to the extent Anthony "[w]as a person lawfully on the premises with the permission of the casino, the wrongful death claim was well pleaded and should have withstood [the d]efendants' motion for dismissal." *Id.* ¶ 23.

**{20}** In this case, Defendants' arguments as to why Sipp does not qualify as a visitor largely consist of points we considered and rejected in *Guzman*. Defendants emphasize that Sipp was only on the premises to do business as an employee of Dial Electric and contend he cannot be a visitor under the Compact given the business nature of his visit. As in *Guzman*, Defendants' argument is essentially that, as a matter of law, Sipp "was not like a regular patron or guest to whom the waiver applies." *Id.* ¶ 19. The *Guzman* Court "disagree[d] that the matter can be determined as a matter of law" for purposes of a motion to dismiss and expressly distinguished *R & R Deli, Inc.*, explaining that the rationale for excluding claims by business entities as a matter of law did not apply to individual plaintiffs who suffer physical injuries to their person or property. *Guzman*, 2009-NMCA-116, ¶¶ 19, 21. Instead, the Court considered whether the plaintiffs had sufficiently alleged Anthony's status as a visitor and held—using language that mirrored UJI 13-1302—that to the extent Anthony was "on the premises with the permission of the casino," the wrongful death claim was well-pleaded. *Guzman*, 2009-NMCA-116, ¶ 23; *accord* UJI 13-1302.

**{21}** Defendants, citing to the policy rationale in *R & R Deli, Inc.*, argue that businesses like Dial Electric can negotiate the terms under which they enter the gaming facility and suggest that employees of the business should be treated in the same manner as the business itself for purposes of the waiver. However, this Court rejected that argument as applied to individual employees, writing in *Guzman* that "we disagree that the bargaining position of [an employee] . . . is analogous to that of a business entity, such that he or she is similarly capable of protecting his or her own interests[.]" 2009-NMCA-116, ¶ 20. Likewise, *Guzman* noted that "the holding in *R & R Deli, Inc.* was based on more than [the] mere bargaining positions of the parties. We also based our decision on the unremarkable fact that business entities cannot suffer the type of 'bodily injury' contemplated in the waiver." *Guzman*, 2009-NMCA-116, ¶ 21. The *Guzman* Court thus concluded that a person capable of suffering a physical injury "is simply not analogous to that of a business entity for purposes of the waiver." *Id.* For the same reasons, we decline to treat Sipp—an individual who suffered physical harm—as a business entity here.

**{22}** Plaintiffs' amended complaint alleged that Sipp was on the premises with the permission of Defendants. In light of *Guzman*, we hold that Sipp's status as a visitor was well-pleaded and should have withstood Defendants' motion for dismissal. *See id.* ¶ 17 (holding that whether the decedent was a "visitor" under the Compact was "a question of fact that was sufficiently pleaded and that dismissal was not proper").

## B. Defendants Have Not Negated Plaintiffs' Allegations That Sipp Was a Visitor to a Gaming Facility

**{23}** Defendants also argue that the Compact's waiver of sovereign immunity is inapplicable because Sipp was not injured while a visitor to a "gaming facility." Defendants note that the Compact defines "gaming facility" as "the buildings or structures in which Class III Gaming is conducted on Indian Lands[,]" and asserted in their motion to dismiss that "Sipp was injured at a [Buffalo Thunder] receiving area with

a garage door (essentially, a loading dock), which is not a Gaming Facility[.]" Plaintiffs counter that the Compact does not require that the injury occur within a gaming facility, and in any event, the loading dock was part of a gaming facility.

{24} We turn first to Defendants' argument that there is no waiver for Sipp's injuries because he was not at gaming facility when he was injured. To the extent Defendants argue that there is no waiver of sovereign immunity for injuries that occur outside of the gaming facility, we observe that they have not provided any authority for that interpretation, and both the plain language of the Compact and New Mexico precedent are to the contrary. Foremost, the Compact does not limit the waiver to claims for injuries occurring "in" or "at" a gaming facility. Rather, Section 8 provides a waiver for "visitors *to* the gaming facility" that suffer an injury caused by the Gaming Enterprise. (Emphasis added.) Moreover, this Court and our Supreme Court have allowed claims for physical injuries occurring outside the gaming facility to proceed in state court when the injured party was a visitor to the gaming facility and the party's injury was caused by the Gaming Enterprise. *See Doe*, 2007-NMSC-008, ¶ 2 (holding that the Compact validly conferred jurisdiction over a claim involving a fifteen-year-old girl who was abducted from a casino parking lot); *see also Mendoza*, 2011-NMSC-030, ¶¶ 2-3 (concluding that the district court had jurisdiction under Section 8 when three patrons who had been served alcohol at the casino were involved in a car crash after leaving the casino); *Guzman*, 2009-NMCA-116, ¶ 1 (holding that the plaintiffs had sufficiently pleaded that an employee who died on his way home from work was a "visitor" to the casino within the terms of the Compact). We cannot adopt Defendants' interpretation while remaining consistent with these precedents.

{25} Defendants also contend their motion to dismiss raised a factual challenge to subject matter jurisdiction that countered Plaintiffs' jurisdictional allegations with evidence that the receiving area was not part of the gaming facility. *See South v. Lujan*, 2014-NMCA-109, ¶¶ 7-9, 336 P.3d 1000 (discussing the standard of review for motions to dismiss that raise factual challenges to subject matter jurisdiction). Defendants point to an affidavit by Angela Padilla, the director of the Pueblo of Pojoaque Gaming Commission, which stated:

> [The Pueblo of Pojoaque Gaming Commission (PPGC)] has issued to Buffalo Thunder Inc. ("BTI") a license as a Gaming Enterprise with authority to conduct gaming at Buffalo Thunder Resort and Casino ("BRTC"). BRTC is a trade name that is not a legal entity which encompasses both (1) Buffalo Thunder Resort ("BTR"), another trade name that is not a legal entity, which refers to various hotel and resort facilities that do not include any gaming, and (2) a physically distinct casino. BTI is only authorized by its license from PPGC to operate gaming at that casino, *which does not include any receiving area with a garage-type door*. (Emphasis added.)

Defendants assert that Padilla's affidavit is sufficient to negate Plaintiffs' allegations that Sipp was a visitor to a gaming facility. We disagree. While the affidavit states that the

casino does not have a receiving area, it is silent about whether the receiving area was otherwise a part of "*the buildings or structures* in which Class III Gaming is conducted." Plaintiffs responded that the receiving area and the casino are all in the same building, under the same roof, but as Defendants noted below, Plaintiffs did not submit evidence on that point. However, during oral argument to this Court, Defendants acknowledged that the receiving area is connected to the casino—specifically, that the receiving area is at the back of the hotel, and access to the casino is through the hotel lobby. Under the narrow circumstances presented here, neither party has produced evidence either establishing or negating Plaintiffs' jurisdictional allegations. In the absence of evidence in the record, we are left only with the allegations in Plaintiffs' complaint. Accepting those allegations as true, we conclude Plaintiffs sufficiently pleaded that Sipp was a visitor to Buffalo Thunder Resort and Casino who suffered a bodily injury proximately caused by the conduct of the Gaming Enterprise.

**{26}** As a final matter, Defendants have argued on appeal that particular entities are not properly joined and that Hella Rader's derivative claims fail as a matter of law under *Guzman*, 2009-NMCA-116, ¶¶ 24-26. These issues were not raised or litigated below and the district court has not had the opportunity to resolve them. To the extent these issues are jurisdictional, we decline to exercise our discretion to rule on them in the first instance. *See Morris v. Brandenburg*, 2015-NMCA-100, ¶ 51, 356 P.3d 564 (noting that appellate courts have the district to consider unpreserved questions involving jurisdiction).

**CONCLUSION**

**{27}** For the foregoing reasons, we reverse the district court's dismissal of Plaintiffs' lawsuit and remand for further proceedings consistent with this opinion.

**{28} IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**SHAMMARA H. HENDERSON, Judge**