The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number:

Filing Date: January 16, 2024

**NO. S-1-SC-39169**

**JEREMIAH SIPP a/k/a SAGE RADER,
and HELLA RADER,**

Plaintiffs-Respondents,

v.

**BUFFALO THUNDER, INC.; BUFFALO
THUNDER DEVELOPMENT AUTHORITY;
PUEBLO OF POJOAQUE; PUEBLO OF
POJOAQUE GAMING COMMISSION; and
POJOAQUE GAMING, INC.,**

Defendants-Petitioners.

**ORIGINAL PROCEEDING ON CERTIORARI
David K. Thomson, District Judge**

Rey-Bear McLaughlin, LLP
Daniel I.S.J. Rey-Bear
Timothy H. McLaughlin
Spokane, WA

for Petitioners

Valdez and White Law Firm, LLC
Timothy L. White
Albuquerque, NM

for Respondents

Rothstein Donatelli, LLP
Richard W. Hughes
Donna M. Connolly
Santa Fe, NM

for Amici Curiae Pueblos of Santa Ana and Santa Clara

Chestnut Law Offices, P.A.
Ann Berkley Rodgers
Albuquerque, NM

for Amicus Curiae Pueblo of Acoma

VanAmberg, Rogers, Yepa, Abeita, Gomez & Wilkinson, LLP
C. Bryant Rogers
David T. Gomez
Santa Fe, NM

for Amicus Curiae Taos Pueblo

Pueblo of Laguna
James M. Burson
Laguna, NM

for Amicus Curiae Pueblo of Laguna

Pueblo of Sandia
Steffani A. Cochran
Bernalillo, NM

for Amicus Curiae Pueblo of Sandia

Frye & Kelly, P.C.
Paul E. Frye
Albuquerque, NM

for Amicus Curiae Ohkay Owingeh

Sonosky, Chambers, Sachse, Mielke & Brownell, LLP
David C. Mielke
Albuquerque, NM

for Amici Curiae Pueblo of Isleta and San Felipe Enterprises

Laguna Development Corporation
Leander Bergen
Alicia Sanasac
Albuquerque, NM

for Amicus Curiae Laguna Development Corporation

University of New Mexico School of Law
Michael B. Browde
David J. Stout
Albuquerque, NM

for Amicus Curiae New Mexico Trial Lawyers Association

**OPINION**

**BACON, Chief Justice.**

{1}     The instant case requires us to determine whether the jurisdiction shifting from tribal court to state court authorized under Section 8(A) ("Policy Concerning Protection of Visitors") of New Mexico's Tribal-State Class III Gaming Compact (the Compact)[1] was terminated under the Compact's own terms by either *Pueblo of Santa Ana v. Nash*, 972 F. Supp. 2d 1254 (D.N.M. 2013), *appeal dismissed*, 10th Cir. (13-2182 & 13-2191) (2014), or *Navajo Nation v. Dalley*, 896 F.3d 1196 (10th Cir. 2018), *cert. denied sub nom. McNeal v. Navajo Nation*, 139 S. Ct. 1600 (2019). The relevant terms of Section 8(A) provide that

> [f]or purposes of this Section, any such claim [for bodily injury or property damage] may be brought in state district court, including claims arising on tribal land, *unless it is finally determined by a state or federal court that IGRA does not permit the shifting of jurisdiction over visitors' personal injury suits to state court.*

(Emphasis added.)

---

[1]The Tribal-State Class III Gaming Compact at issue in this case was signed by the Pueblo of Pojoaque in 2005 and is contained in the case record. The standard 2001, 2007, and 2015 compact language as approved by the Legislature is available at NMSA 1978, Ch. 11, Art. 13, Appx. (2023). *See also* N.M. Gaming Control Board, Tribal Compacts, https://www.gcb.nm.gov/gaming/tribal/tribal-compacts/ (last visited Dec. 29, 2023).

{2} Pueblo of Pojoaque and several Pueblo-owned entities (Petitioners) assert that both *Nash* and *Dalley* terminated the jurisdiction shifting in Section 8(A) as each case constitutes a "final[] determin[ation] by a state or federal court" that such jurisdiction shifting is not permitted under the Indian Gaming Regulatory Act (IGRA), 25 U.S.C. §§ 2701-2721. Accordingly, Petitioners argue for reversal of the Court of Appeals' opinion, which reversed the district court's grant of Petitioners' motion to dismiss for lack of subject matter jurisdiction. Jeremiah Sipp and Hella Rader (Respondents) argue for affirmance, asserting that the relevant jurisdiction shifting under Section 8(A) was not terminated by *Nash* or *Dalley* and thus the Court of Appeals' remand of their personal-injury tort claims to the district court for further proceedings was proper.

{3} We reverse, holding under contract law that jurisdiction shifting under Section 8(A) of the Compact was terminated by *Nash*. We therefore do not reach the secondary issue of whether state jurisdiction over such claims is permissible under IGRA in light of *Michigan v. Bay Mills Indian Community*, 572 U.S. 782 (2014).

## I.  FACTUAL AND PROCEDURAL BACKGROUND

{4} IGRA creates the framework for states and Indian tribes to cooperate in regulating on-reservation tribal gaming. Under IGRA, a tribal-state gaming compact is required for an Indian tribe to have a Class III gaming facility, and the statute

"prescribes the matters that are permissible subjects of gaming-compact negotiations between tribes and states." *Mendoza v. Isleta Resort & Casino*, 2020-NMSC-006, ¶ 14, 460 P.3d 467. In 2005 and again in 2017, the Pueblo of Pojoaque and the State of New Mexico entered into the Compact. Section 8(A) of the Compact provides that visitors to Indian casinos may bring their bodily injury and property damage claims against tribal entities in state court unless a state or federal court finally determines that IGRA does not permit the shifting of jurisdiction over those claims to state court. This language terminating a visitor's option to choose state court jurisdiction is the subject of the instant dispute.

{5}   Respondents filed a complaint for damages in state district court against Petitioners Buffalo Thunder, Inc., Buffalo Thunder Development Authority, the Pueblo of Pojoaque, the Pueblo of Pojoaque Gaming Commission, and Pojoaque Gaming, Inc. The complaint alleged that in the course of his employment for Dial Electric, Respondent Sipp was in the receiving area of the Buffalo Thunder casino when his head struck a large electric garage-type door which was unexpectedly and suddenly lowered by a casino employee. The complaint further alleged that Petitioners' negligence directly resulted in Respondent Sipp being "rendered unconscious, causing him severe injuries, including but not limited to severe head

3

and spinal injuries." Respondent's claims for damages included related medical costs and Respondent Hella Rader's loss of consortium.

{6} Following a hearing, the district court granted Petitioners' motion to dismiss for lack of subject matter jurisdiction. The district court concluded that Respondents' claims did not fall within Section 8(A), and that "[t]herefore, [Respondents] ha[d] not established an express abrogation or waiver of [Petitioners'] sovereign immunity as required to establish subject matter jurisdiction" in state court. Respondents timely appealed.

{7} In the Court of Appeals, Respondents argued that the district court erred in granting Petitioners' motion to dismiss, asserting that Section 8(A) of the Compact "expressly waives sovereign immunity and provides for state court jurisdiction over Plaintiffs' claims." *Sipp v. Buffalo Thunder, Inc.*, 2022-NMCA-015, ¶ 6, 505 P.3d 897. Petitioners' counterarguments included that jurisdiction shifting under Section 8(A) had been terminated by both *Nash* and *Dalley*. *Id.* ¶ 7.

{8} The Court of Appeals held that Respondents sufficiently pleaded claims that fall under Section 8(A)'s waiver of sovereign immunity. *Id.* The Court further concluded that, "[b]ecause both *Nash* and *Dalley* explicitly restricted their holdings to their case-specific facts, and both cases left open the possibility that IGRA permits jurisdiction shifting for tort claims under different circumstances," neither federal

4

case triggered the "termination clause" at the end of Section 8(A). *Id.* ¶ 14; *see id.* ¶ 9 (quoting Section 8(A)'s termination clause as "*unless it is finally determined by a state or federal court that IGRA does not permit the shifting of jurisdiction over visitors' personal injury suits to state court*"). Accordingly, the Court of Appeals concluded that "the district court in this case was not stripped of subject matter jurisdiction on these grounds." *Id.* ¶ 14. In addition, the Court of Appeals rejected Petitioners' argument that *Bay Mills*, 572 U.S. 782, directs a different result, concluding that "the [*Bay Mills*] Court did not pass upon the question addressed by *Dalley* and *Nash* . . . [, and c]onsequently, *Bay Mills* is not dispositive of the question before us." 2022-NMCA-015, ¶ 15. Under these considerations, the Court of Appeals remanded to the district court for further proceedings. *Id.* ¶¶ 14, 27. Petitioners timely petitioned this Court for a writ of certiorari.

{9}    This appeal presents two questions: first, "Was the termination clause in the tort-claims provision of the [Compact] triggered once [*Nash*] and then [*Dalley*] each finally determined that IGRA does not permit shifting jurisdiction to state court over casino visitors' tort claims?"; second, "Does the holding in [*Bay Mills*] that 'class III gaming activity' throughout [IGRA] unambiguously means only activity 'involved in playing class III games' 'in the poker hall' and not also 'off-site' operations, substantially limit the decision in *Doe v. Santa Clara Pueblo*, 2007-

5

NMSC-008, 141 N.M. 269, 154 P.3d 644, that IGRA authorizes state jurisdiction over casino visitor tort claims, to only claims directly related to such activity?"

{10} Following oral argument, we ordered the parties to brief what effect, if any, the following cases have on the questions before the Court: *C.R. Anthony Co. v. Loretto Mall Partners*, 1991-NMSC-070, 112 N.M. 504, 817 P.2d 238; *Mark V, Inc. v. Mellekas*, 1993-NMSC-001, 114 N.M. 778, 845 P.2d 1232; and *ConocoPhillips Co. v. Lyons*, 2013-NMSC-009, 299 P.3d 844. In our order, we cited *Mendoza* for the proposition that "'Gaming compacts are contracts between the two parties of the State and a Tribe, and we treat them as such.'" Order, *Sipp v. Buffalo Thunder, Inc.*, S-1-SC-39169 (N.M. Apr. 28, 2023) (text only)[2] (quoting *Mendoza*, 2020-NMSC-006, ¶ 28).

## II.    DISCUSSION

## A.    Standard of Review

{11} "In reviewing an appeal from an order granting or denying a motion to dismiss for lack of jurisdiction, the determination of whether jurisdiction exists is a question

---

[2]The "text only" parenthetical as used herein indicates the omission of all of the following—internal quotation marks, ellipses, and brackets—that are present in the quoted source, leaving the quoted text itself otherwise unchanged.

of law which an appellate court reviews de novo." *Gallegos v. Pueblo of Tesuque*, 2002-NMSC-012, ¶ 6, 132 N.M. 207, 46 P.3d 668.

**B.    Both *Nash* and *Dalley* Qualify Under Section 8(A) of the Compact to Terminate Jurisdiction Shifting to State Court of Relevant Claims for Bodily Injury or Property Damage**

{12}    We first address whether either *Nash* or *Dalley* triggered the termination clause in Section 8(A) of the Compact, thereby terminating the Tribe's limited waiver of sovereignty expressed in Section 8(A). As the parties agree, state jurisdiction in the instant case relies on this limited waiver. Accordingly, if either *Nash* or *Dalley* triggered the termination clause, then jurisdiction shifting of claims to state court such as Respondents' ended under the Compact's own terms in Section 8(A).

{13}    Petitioners, citing New Mexico caselaw and secondary sources, first apply contract law to characterize the termination clause in Section 8(A) as "provid[ing] for what . . . is now technically called an *event that terminates a duty*, under which an event agreed on by the parties discharges a party's contractual obligation." (Emphasis added.) Petitioners implicitly argue that both *Nash* and *Dalley* constitute that triggering event provided in Section 8(A), thereby terminating the Tribe's duty to waive its immunity from suit. Petitioners assert that both federal cases "'finally determined' the relevant issue under the Gaming Compact's termination clause

7

because they are both final court decisions." Petitioners quote *Kersey v. Hatch* for the proposition that "a case is finalized when a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for filing a petition for certiorari elapsed or a petition for certiorari finally denied." 2010-NMSC-020, ¶ 20, 148 N.M. 381, 237 P.3d 683 (text only) (citation omitted). Petitioners also assert that the finality of the decisions in *Nash* and *Dalley* is not rendered infirm by the "irrelevant" qualifiers in those cases on which the Court of Appeals relied for its contrary holding.

{14} Respondents assert that neither *Nash* nor *Dalley* triggered the termination clause because both cases "are inapposite, incorrectly decided, and not binding." Respondents argue that the Court of Appeals correctly interpreted the holdings of *Nash* and *Dalley* as not terminating Petitioners' "agreement under the compact," and argue as well that "a proper review of [both] cases shows that they are just wrong" on the merits.

{15} As discussed, we treat gaming compacts as contracts between the State and the Tribe. *Mendoza*, 2020-NMSC-006, ¶ 28; *see Gallegos*, 2002-NMSC-012, ¶ 30 ("Tribal-state gaming compacts are agreements, not legislation, and are interpreted as contracts." (internal quotation marks and citation omitted)). "[W]e will not ignore the clear language of the Compact, nor can we relieve the parties to the Compact

from their obligations thereunder." *Doe*, 2007-NMSC-008, ¶ 15. "Contract interpretation is a matter of law that we review de novo." *Rivera v. Am. Gen. Fin. Servs.*, 2011-NMSC-033, ¶ 27, 150 N.M. 398, 259 P.3d 803. In *Lyons*, we said:

> The purpose, meaning and intent of the parties to a contract is to be deduced from the language employed by them; and where such language is not ambiguous, it is conclusive. . . . If a court concludes that there is no ambiguity, the words of the contract are to be given their ordinary and usual meaning. When interpreting an unambiguous contract, a court is limited to interpreting the contract which the parties made for themselves as a court may not alter or make a new agreement for the parties.

2013-NMSC-009, ¶ 23 (brackets, internal quotation marks, and citations omitted).

{16}     We begin our analysis by examining the plain language of the contractual provision at the heart of this case, Section 8(A), which states in full:

> The safety and protection of visitors to a Gaming Facility is a priority of the Tribe, and it is the purpose of this Section to assure that any such persons who suffer bodily injury or property damage proximately caused by the conduct of the Gaming Enterprise have an effective remedy for obtaining fair and just compensation. To that end, in this Section, and subject to its terms, the Tribe agrees to carry insurance that covers such injury or loss, agrees to a limited waiver of its immunity from suit, and agrees to proceed either in binding arbitration proceedings or in a court of competent jurisdiction, at the visitor's election, with respect to claims for bodily injury or property damage proximately caused by the conduct of the Gaming Enterprise. For purposes of this Section, any such claim may be brought in state district court, including claims arising on tribal land, *unless it is finally determined by a state or federal court that IGRA does not permit the shifting of jurisdiction over visitors' personal injury suits to state court.*

(Emphasis added.)

{17} The plain language of the termination clause—a provision negotiated between the State of New Mexico and the Pueblo of Pojoaque—is clear and unambiguous in directing three relevant conclusions. First, the broad, inclusive language of "a state or federal court" directs that *any* state or federal court may qualify to trigger the termination clause. If the parties intended to limit the scope as to *which* state or federal courts qualify in this regard, they certainly could have done so. Instead, nothing in the parties' contractual agreement embodied in Section 8(A) suggests any such limitation.

{18} Second, it follows logically that "finally determined" signifies a final result within the authority and capacity of such a state or federal court. In its ordinary and usual meaning, a court's *final determination* of an issue signifies a disposition or order which resolves necessary issues and from which the parties may appeal. *See Handmaker v. Henney*, 1999-NMSC-043, ¶ 8, 128 N.M. 328, 992 P.2d 879 ("For purposes of appeal, an order or judgment is not considered final unless all issues of law and fact have been determined and the case disposed of by the trial court to the fullest extent possible." (internal quotation marks and citation omitted)); *Kelly Inn No. 102, Inc. v. Kapnison*, 1992-NMSC-005, ¶ 14, 113 N.M. 231, 824 P.2d 1033 ("The general rule in New Mexico for determining the finality of a judgment is that an order or judgment is not considered final unless all issues of law and fact have

been determined and the case disposed of by the trial court to the fullest extent possible." (internal quotation marks and citation omitted)); *Springer Transfer Co. v. Bd. of Comm'rs*, 1939-NMSC-047, ¶ 9, 43 N.M. 444, 94 P.2d 977 ("A final decree is one which disposes of the case or a distinct branch thereof. It is one which either terminates the action itself, or decides some matter litigated by the parties, or operates to divest some right, in such manner as to put it out of the power of the court." (text only) (citations omitted)).[3] As with the meaning of "a state or federal court," if the parties intended for "finally determined" to have a special meaning outside of its ordinary and usual meaning, they certainly could have expressed such an agreement.

{19}     We note that Respondents asserted at oral argument that "finally determined" under New Mexico law means "determined by a court of final jurisdiction" and that thus only "a decision by this Court or the United States Supreme Court" could

---

[3]Though not addressed by the parties, we note that the principle of finality in this context is bolstered by the fact that no appellate review followed from *Nash* or *Dalley*. We also note that other cases with relevant holdings and where the time for appeal has lapsed have followed *Nash* and *Dalley*. *See, e.g.*, *Chicken Ranch Rancheria of Me-Wuk Indians v. Newsom*, 530 F. Supp. 3d 970, 987 (E.D. Cal. 2021) ("[C]hanging the venue of patron personal injury and employee claims from tribal court to state court is not a permitted topic of IGRA negotiation."); *Pueblo of Pojoaque v. Wilson*, 619 F. Supp. 3d 1095, 1103 (D.N.M. 2022) ("The Court therefore finds, pursuant to *Dalley*, that the IGRA does not permit the shifting of jurisdiction over [plaintiff's tort] claims to the state courts.").

qualify to trigger the termination clause. However, Respondents did not argue this proposition in their briefs and have offered no authority for it. *See State ex rel. Off. of State Eng'r v. Romero*, 2022-NMSC-022, ¶ 2 n.1, 521 P.3d 56 (pointing out that this Court will not reach an issue for which a party "makes no argument and provides no facts in the briefing to help us answer that question"). In addition, we conclude that this proposition is refuted by the cases cited above defining finality.

{20}    Third, the Compact directs that state jurisdiction of relevant claims terminates upon the event of a qualifying court finally determining that "IGRA does not permit the shifting of jurisdiction over visitors' personal injury suits to state court." Under current contract law, we agree with Petitioners that a state or federal court finally determining such an interpretation of IGRA constitutes an "event that terminates a duty." *See* Restatement (Second) of Contracts § 230 (1981).[4] Specifically, under the plain language of Section 8(A), that event would trigger the termination clause,

---

[4]We note that the term "condition subsequent" is no longer used by at least one authoritative treatise. *See* Restatement (Second) of Contracts § 224, Rep.'s Note (1981) ("This Section revises former § 250 to eliminate the terms 'condition precedent' and 'condition subsequent.' This terminology has long been criticized and has caused confusion when used in an attempt to answer questions related to the burdens of pleading and proof."); *see also id.* § 230 ("[I]f under the terms of the contract the occurrence of an event is to terminate an obligor's duty of immediate performance or one to pay damages for breach, that duty is discharged if the event occurs.").

thereby terminating the Tribe's duty to provide its "limited waiver of immunity from suit."

{21} Importantly, the unambiguous language of the termination clause provides for the termination of state court jurisdiction upon such event without regard to whether the state or federal court's determination is contrary to any other court's interpretation of IGRA. Stated differently, the event that triggers the termination clause need not be affirmed or followed by this Court or any other court. For this reason, Respondents' arguments regarding *Doe* are misplaced, as the occurrence of the qualifying event terminates Petitioners' duty regardless of prior caselaw. Further, this Court need not interpret IGRA itself but simply must determine whether *Nash* or *Dalley* interpreted IGRA in a manner that triggers the termination clause in Section 8(A).

{22} In *Nash*, the federal district court "enter[ed] a declaration that the [IGRA] does not authorize an allocation of jurisdiction from tribal court to state court over a personal injury claim arising from the allegedly negligent serving of alcohol on Indian land." 972 F. Supp. 2d at 1266. The *Nash* Court determined that (1) "IGRA limits permissible subjects of negotiation" for tribal-state gaming compacts, and (2) § 2710(d)(3)(C)(ii) of IGRA, the only relevant subparagraph to mention jurisdiction, permits jurisdiction shifting "only as necessary for the enforcement of laws and

13

regulations of the State or Indian tribe, that are directly related to, and *necessary for, licensing and regulation* of class III gaming activities." 972 F. Supp. 2d at 1264-65. Concluding that "[a] personal injury claim arising from the negligent serving of alcohol has no bearing whatsoever on the licensing or regulation of class III gaming activities," the *Nash* Court held that New Mexico state courts had no jurisdiction to hear the underlying personal injury claim. *Id.* at 1264-67.

{23}     Citing precedent and IGRA, *Nash* expressly "conclude[d] that the IGRA does not permit such a jurisdictional shifting." *Id.* at 1263-65 (citing *Kiowa Tribe of Oklahoma v. Mfg. Techs., Inc.*, 523 U.S. 751, 754 (1998); § 2710(d)(3)(C)(ii)). By its plain language, this conclusion within the federal district court's final determination of the issue constitutes the qualifying event that terminates the Tribe's duty to provide its "limited waiver of . . . immunity from suit." Accordingly, we hold that *Nash* triggered the termination clause in Section 8(A), thereby rendering jurisdiction shifting to state court improper "with respect to claims for bodily injury or property damage," including for Respondents' claims here.

{24}     While our holding regarding *Nash* resolves the issue before us, we nonetheless analyze *Dalley* based on its inclusion within the dispositive question on which we granted certiorari. In *Dalley*, the Tenth Circuit Court of Appeals similarly considered "whether IGRA authorizes tribes to enter into gaming compacts with states that

14

allocate jurisdiction to state courts with respect to state-law tort claims." 896 F.3d at 1205. *Dalley* analyzed § 2710(d)(3)(C) of IGRA as well as *Doe* and *Bay Mills* to determine whether state court jurisdiction applied to underlying personal-injury tort claims which arose from an alleged "slip-and-fall" on the casino's wet bathroom floor. 896 F.3d at 1202. The *Dalley* Court's analysis included that jurisdiction shifting under IGRA Subparagraph (C)(ii)—"[n]otably, . . . the only clause in [§ 2710(d)(3)(C)] that explicitly authorizes tribes to allocate jurisdiction to the states"—did not pertain to "such tangential matters as the safety of walking surfaces in Class III casino restrooms." 896 F.3d at 1210. The *Dalley* Court "conclude[d] that IGRA, under its plain terms, does not authorize tribes to allocate to states jurisdiction over tort claims like those brought by the [plaintiffs t]here." *Id.* at 1218.

{**25**}    We recognize that whether "IGRA authorizes" jurisdiction shifting under *Dalley* is not identical phrasing to whether "IGRA does not permit" jurisdiction shifting under Section 8(A). However, under the reasoning in *Dalley*, this is a distinction without a difference, as *Dalley* expressly clarified that a lack of authorization equates to a prohibition in this context:

> It is axiomatic that absent clear congressional authorization, state courts lack jurisdiction to hear cases against Native Americans arising from conduct in Indian country. It is also a well-settled principle that "Congress possesses plenary power over Indian affairs, including the power to modify or eliminate tribal rights."

15

Consequently, congressional approval is necessary—i.e., it is a threshold requirement that must be met—before states and tribes can arrive at an agreement altering the scope of a state court's jurisdiction over matters that occur on Indian land.

896 F.3d at 1204-05 (citations omitted). Under this reasoning, IGRA cannot permit what it does not authorize, and thus the Tenth Circuit Court's final determination in *Dalley* that relevant jurisdiction shifting is *not authorized* under IGRA is functionally equivalent to determining that IGRA *does not permit* such jurisdiction shifting. Accordingly, we conclude that *Dalley*, like *Nash*, constitutes the qualifying event under Section 8(A) to trigger the Compact's termination clause.

{26} Respondents' arguments regarding *Nash* and *Dalley* are irrelevant, as they rely on stare decisis principles rather than contract law. Asserting that both cases "are inapposite, incorrectly decided, and not binding," Respondents implicitly invite us to review on the merits *Nash*'s and *Dalley*'s interpretations of IGRA. However, as we have established, the question here is whether either of those cases triggered the termination clause in Section 8(A), not whether we concur with the holding or reasoning of either case.

{27} We also address the Court of Appeals' contrary conclusion regarding *Nash* and *Dalley*. *See Sipp*, 2022-NMCA-015, ¶¶ 9-14. The Court of Appeals stated that both cases "explicitly restricted their holdings to their case-specific facts" and "left open the possibility that IGRA permits jurisdiction shifting for tort claims under

16

different circumstances," and therefore "neither can be said to have 'finally determined'" the relevant issue. *Id.* ¶ 14. This reasoning suggests that the only way a final determination by a state or federal court could trigger the termination clause in Section 8(A) is if that court thereby determined that *no* personal-injury tort claims are allowable under IGRA. We reject this view for two reasons.

{28} First, such a reading of "finally determined" would be outside the term's ordinary and usual meaning for a state or federal court. The parties were free to articulate and adopt such a distinct meaning of the term but did not. Second, this view would render such a final determination impossible where IGRA expressly permits negotiation over some forms of relevant jurisdiction shifting: "Any Tribal-State compact . . . may include provisions relating to . . . the allocation of . . . civil jurisdiction between the State and the Indian tribe necessary for the enforcement of such laws and regulations." § 2710(d)(3)(C)(ii). Given this patent grant of permission in IGRA, which we need not interpret, the Court of Appeals' reading of "finally determined" would render the termination clause a nullity, as no such absolute determination of the scope of IGRA could ever be possible. Nothing in Respondents' arguments or the record supports such a reading or result. For these reasons, we reject the Court of Appeals' conclusion that neither *Nash* nor *Dalley* triggered the termination clause.

## III.   CONCLUSION

{29}   Under the foregoing, we hold that both *Nash* and *Dalley* qualified under the plain language of Section 8(A) of the Compact to terminate jurisdiction shifting of personal-injury tort claims to state court. Accordingly, state courts do not possess subject matter jurisdiction to hear Respondent Sipp's underlying claim, and we remand for dismissal with prejudice.

{30}   Based on our holding, we do not reach the question of whether *Bay Mills* substantially limits the holding in *Doe*.

{31}   **IT IS SO ORDERED.**

_____

**C. SHANNON BACON, Chief Justice**

**WE CONCUR:**

_____

**MICHAEL E. VIGIL, Justice**

_____

**BRIANA H. ZAMORA, Justice**

_____

**JOSHUA A. ALLISON, Judge**
**Sitting by designation**

_____

**DANIEL A. BRYANT, Judge**
**Sitting by designation**

18